IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JACKIE X. BLUE, individually and on
behalf of all others similarly situated                                             PLAINTIFF

v.                                    Case No. 5:84-cv-00551-KGB

DEXTER PAYNE, Director,
Arkansas Department of Correction, *et al.*                                          DEFENDANTS

### ORDER

Before the Court are several pending motions (Dkt. Nos. 137; 139; 140; 144; 148).  In this matter, plaintiff Jackie X. Blue, individually and on behalf of all others similarly situated, filed a *pro se* motion to reopen court's order by way of consent decree on the basis of a breach of same consent agreement of defendant (Dkt. No. 133).  Mr. Blue alleges that the Arkansas Department of Corrections ("ADC") has failed to honor fully and completely the stipulated agreements of the consent decree that the parties entered into in this litigation on August 31, 1987 ("Consent Decree") (*Id.*, ¶¶ 1–2; *see* Dkt. No. 137-1).

**I.     Procedural History**

By prior Order, the Court directed Dexter Payne, Division of Correction Director of the ADC, in his official capacity ("ADC"), to respond to Mr. Blue's motion (Dkt. No. 135).  The ADC responded by filing a motion to dismiss for failure to state a claim that appears to address the merits of Mr. Blue's dispute (Dkt. No. 137).[1]

Mr. Blue filed a motion to amend the Consent Decree, to which the ADC responded in opposition (Dkt. Nos. 139; 141).  Mr. Blue also filed a motion to appoint counsel, to which the ADC responded in opposition (Dkt. Nos. 140; 143).  Mr. Blue filed a reply (Dkt. No. 145).  In

---

[1] The Court directs that the Clerk substitute Dexter Payne, Division of Correction Director of the ADC, in his official capacity, as the named defendant in this action.

addition, Mr. Blue requested an evidentiary hearing, and the ADC responded in opposition to that request (Dkt. Nos. 144; 146).

The Court then entered an Order determining that, in 1987, the parties intended to enter into a Consent Decree subject to ongoing enforcement by the Court based on the language of the Consent Decree itself and that the relief in the Consent Decree is narrowly drawn, extends no further than necessary to correct the violation of the federal right at issue in the underlying litigation, and is the least intrusive means necessary to correct the violation (Dkt. No. 147, at 5). *See* 18 U.S.C. § 3626(b)(2). The Court granted Mr. Blue's motion to reopen for the limited purpose of determining whether he is entitled to the relief he seeks on the merits (Dkt. Nos. 133; 147, at 5).

Because the ADC's motion to dismiss for failure to state a claim addressed the merits of Mr. Blue's dispute and included for the Court's consideration an affidavit from an ADC witness and written ADC policies, the Court gave to Mr. Blue notice that it intended to consider those matters attached to the ADC's motion to dismiss, directed Mr. Blue to file within 90 days from the entry of the Court's Order a response to the ADC's motion to dismiss, and directed the ADC to file a reply within 30 days from the date of Mr. Blue's response (Dkt. No. 147, at 6).

Mr. Blue filed a motion to amend his complaint (Dkt. No. 148). The ADC responded to that filing (Dkt. No. 149).

As directed by the Court, Mr. Blue filed a response to the motion to dismiss for failure to state a claim (Dkt. No. 150), and the ADC filed a reply (Dkt. No. 151).

The Court examines the pending motions.

### I.     Motion To Dismiss For Failure To State A Claim

The ADC has filed a motion to dismiss for failure to state a claim that addresses the merits of Mr. Blue's requests (Dkt. No. 137). The ADC attached to its filing additional documents (Dkt.

Nos. 137-1; 137-2; 137-3; 137-4; 137-5; 137-6; 137-7; 137-8). At the time of the filing, out of an abundance of caution, the Court gave notice to Mr. Blue that it intended to consider the additional documents and provided Mr. Blue and the ADC additional time to file with the Court matters for the Court's consideration (Dkt. No. 147). Mr. Blue and the ADC made additional filings (Dkt. Nos. 150, 151). The ADC takes the position that all exhibits attached to its motion to dismiss "are matters of public record or documents integral to the claim" that the Court may consider on a motion to dismiss (Dkt. No. 151, at 1 n.2). The Court will examine the pending motion both in the light of the standard for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and summary judgment pursuant to Federal Rule of Civil Procedure 56. For good cause shown, the Court grants the ADC's motion (Dkt. No. 137).

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all

3

reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

When ruling on a Rule 12(b)(6) motion to dismiss, a district court generally may not consider materials outside the pleadings. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The district court "may, however, consider some public records, materials that do not contradict the complaint or materials that are 'necessarily embraced by the pleadings.'" *Noble Sys. Corp.*, 543 F.3d at 978 (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

  **B.**   **Rule 56 Standard**

Pursuant to the Federal Rules of Civil Procedure, the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable jury could render its verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). Mere denials or allegations are insufficient to defeat an otherwise properly supported motion for summary judgment. *See Com. Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271–72 (8th Cir. 1992); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

The initial burden is on the party seeking summary judgment to demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). If the moving party satisfies its burden, the burden

4

then shifts to the non-moving party to establish the presence of a genuine issue that must be determined at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (quoting *Matsushita*, 475 U.S. at 586, 587). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

      **C.**     **Analysis**

Mr. Blue contends that the ADC violated the Consent Decree because, as he construes the Consent Decree, it requires the hiring of a Nation of Islam[2] Muslim Chaplain (Dkt. No. 150, ¶ 7; *see* Dkt. No. 137-1 (Consent Decree)). Mr. Blue also contends that the ADC violated the Consent Decree because the ADC has not acted in good faith by implementing the requirement that a free-world volunteer be present at all denomination religious services after the Consent Decree was signed; Mr. Blue claims this was done in an effort to prevent Nation of Islam Muslims from meeting and that this requirement applies only to Muslim inmates (Dkt. No. 150, ¶¶ 4-5, 8).

The ADC argues that it has complied with the Consent Degree by hiring one Muslim Chaplain who serves all Muslims sects (Dkt. Nos. 151, at 4; 137-1, ¶¶ 1, 2, 3, 4 (citing specific paragraphs of the Consent Decree in support)). The ADC has done this based upon unrefuted record evidence before the Court (Dkt. No. 137-2, ¶¶ 2-5, 13). Further, the ADC argues that it has complied with the Consent Decree by allowing Nation of Islam Muslim volunteers to come to the

---

[2] The Nation of Islam is a denomination of Islam, and the Consent Decree refers to the Nation of Islam as "NOI" and also refers to "AMM," another denomination of Islam (Dkt. No. 137-1).

prison for ministry purposes, which the ADC had done based on unrefuted record evidence and continues to attempt to do, while admitting that this task has been difficult (Dkt. Nos. 151, at 2; 137-2, ¶ 25).

The ADC has hired one Muslim Chaplain who serves the needs of each denomination (Dkt. No. 151, at 3). Chaplain Ameen serves the religious needs of each Islamic denomination, including the Nation of Islam, by providing group Islamic services including a weekly Jumu'ah prayer and Khutbah, as well as additional Taleem classes when he is at each unit (*see* Dkt. Nos. 137-2, ¶¶ 14-16, 24; 137-4, ¶ B). Based on the undisputed record evidence before the Court, the Court agrees that the ADC has hired a Muslim Chaplain and, therefore, is not in violation of the Consent Decree on this basis. Mr. Blue is not entitled to relief on this claim.

The ADC also maintains that the Consent Decree does not entitle Nation of Islam Muslim inmates to additional unsupervised services, and the ADC maintains that the Consent Decree does not address allegations of preferential treatment to Christian inmates (Dkt. No. 151, at 2). According to the ADC and record evidence before the Court, Policy 510 and Policy 605 require all denominational or sectarian services be under the direction of a documented authority of that specific denomination or sect (Dkt. Nos. 137-2, ¶ 43; 137-6; 137-8). This requires a free world volunteer, who has received the necessary authorization and security training, to lead the denominational or sectarian service (Dkt. Nos. 137-2, ¶ 44; 137-6). Additionally, Policy 310 provides that, as a general matter, no religious service will be held for inmates unless an approved free world sponsor is present and in charge of the service (Dkt. Nos. 137-2, ¶ 39; 137-5, ¶ D). These policies prohibiting religious services without an approved free-world sponsor apply to every other religious service within the ADC except for Friday Jumu'ah Prayer (Dkt. Nos. 137-2, ¶¶ 24-37, 40; 137-5, ¶ D). Further, the ADC asserts that a version of Policies 310, 510, and 605

6

were in existence before the Consent Decree was entered into by the parties (Dkt. Nos. 137-5; 137-6; 137-8).

With respect to Jumu'ah Prayer, the ADC maintains that it provides videotaped services in accord with the Court order in *Shabazz v. Arkansas Department of Correction*, Case No. 5:03-cv-00409 JMM, 2006 WL 8451370 (E.D. Ark. June 22, 2006), *aff'd* 268 Fed.App'x. 487 (8th Cir. 2008), which according to the ADC modified the Consent Decree in this case (Dkt. No. 137, at 3).[3] Further, the ADC asserts that the Consent Decree requires that Islamic services be scheduled in substantially similar times as Christian services and that the number of inmates participating in Islamic services should be subject to the same participant limitations as those of Christian services (Dkt. No. 137-1, ¶ 6). The ADC maintains that it complies with this requirement.

Mr. Blue fails to rebut the ADC's record evidence on these matters. As a result, based on the undisputed record evidence before the Court, the Court agrees that the ADC has complied with the Consent Decree provisions at issue in this litigation and, therefore, is not in violation of the Consent Decree as alleged by Mr. Blue. Mr. Blue is not entitled to relief in this case on his claims directed toward the Consent Decree provisions. For these reasons, the Court grants the ADC's motion (Dkt. No. 137).

II. **Motion To Amend Consent Decree And Motion To Amend Complaint**

In an earlier filing in this case, Mr. Blue filed a motion to amend the consent decree (Dkt. No. 139). More recently, Mr. Blue filed a motion to amend his complaint (Dkt. No. 148). With these motions, Mr. Blue seeks to bring new claims against the ADC or obtain new relief as to the ADC based upon his allegations.

---

[3] The ADC traces in its filings the history that resulted in the Consent Decree and other litigation that the ADC maintains is related litigation (Dkt. No. 138, at 6-7).

The Supreme Court has addressed the standard to apply when considering whether to permit a modification to a consent decree. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 393 (1992) (holding that "a party seeking modification of a consent decree must establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstances.").

In his motion to amend the consent decree, Mr. Blue seeks to include allegations that ADC religious policies 505, 545, and 605 violate his Fifth and Fourteenth Amendment rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1-(a)("RLUIPA") (Dkt. No. 139). The ADC objected to the motion on the basis that the motion attempts to bring new legal claims unrelated to the issue of whether the ADC is in violation of the Consent Decree (Dkt. No. 141).

In his motion to amend his complaint, Mr. Blue again seeks to bring new claims against the ADC (Dkt. No. 148). He seeks to add a claim that the ADC is in violation of the RLUIPA because it allegedly shows preferential treatment to Christian inmates (*Id.*). Specifically, Mr. Blue asserts that the ADC as a whole treats Nation of Islam Muslims differently and that the ADC's policies are under-inclusive because the Nation of Islam Muslims do not have the same number of worship opportunities and activities as other religions and because the Nation of Islam Muslims have only one Chaplain at the ADC, unlike other religions that have multiple chaplains (*Id.*). The ADC objects to this motion to amend as another attempt to bring new legal claims unrelated to the Consent Decree (Dkt. No. 149).

The claims Mr. Blue seeks to assert with these motions do not reference the Consent Decree entered in this matter. If Mr. Blue wishes to pursue these claims, he must do so in a separate action. For these reasons, the Court denies Mr. Blue's motion to amend the consent decree and motion to amend his complaint (Dkt. Nos. 139; 148).

### III. Motion To Appoint Counsel

In civil cases, there is no constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The Eighth Circuit Court of Appeals has delineated certain criteria for district courts to consider in deciding whether to recruit counsel, including the factual and legal complexity of the underlying issues, the existence of conflicting testimony, and the ability of the indigent plaintiff to investigate the facts and present his claims. *Phillips v. Jasper Cnty. Jail,* 437 F.3d 791, 794 (8th Cir. 2006). Here, Mr. Blue has adequately demonstrated his ability to investigate the facts and present his claims, considering the factual and legal complexity of those claims and the underlying issues. As a result, and considering the procedural posture of this case, the Court denies Mr. Blue's motion to appoint counsel (Dkt. No. 140).

### IV. Motion For Evidentiary Hearing

Because the Court determines that Mr. Blue has failed to demonstrate an alleged breach of the Consent Decree entered into by the parties in this case and because Mr. Blue must file a new action to pursue new or additional legal claims unrelated to the alleged breached of the Consent Decree, the Court denies Mr. Blue's request for an evidentiary hearing (Dkt. No. 144). An evidentiary hearing is not necessary in this case to resolve the matters pending before the Court.

### V. Conclusion

For the foregoing reasons, the Court:

1. grants the ADC's motion to dismiss; Mr. Blue is not entitled to relief on his claims directed toward the Consent Decree provisions (Dkt. Nos. 137);

2. denies Mr. Blue's motion to amend the Consent Decree (Dkt. No. 139);

3. denies Mr. Blue's motion to appoint counsel (Dkt. No. 140);

4. denies Mr. Blue's motion for an evidentiary hearing (Dkt. No. 144); and

5. denies Mr. Blue's motion to amend complaint (Dkt. No. 148).

It is so ordered this 30th day of September, 2021.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge